UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-2496

QITIAN NI,

Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: December 9, 2014            Decided: March 17, 2015

Before MOTZ and KING, Circuit Judges, and Arenda L. Wright ALLEN, United States District Judge for the Eastern District of Virginia, sitting by designation.

Petition denied by unpublished per curiam opinion.

**ARGUED**: Troy Nader Moslemi, Flushing, New York, for Petitioner. Briena Lorraine Strippoli, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF**: Stuart F. Delery, Assistant Attorney General, Blair T. O'Connor, Assistant Director, Juria L. Jones, Trial Attorney, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Qitian Ni (Mr. Ni), a native and citizen of the People's Republic of China (China), petitions for review of an order of the Board of Immigration Appeals (BIA) dismissing his appeal from the Immigration Judge's denial of his requests for (1) asylum, (2) withholding of removal, and (3) protection under the Convention Against Torture (CAT).

Mr. Ni raises four arguments. First, Mr. Ni contends that he demonstrated sufficient past persecution to warrant asylum, and asserts that the BIA erred in finding that past persecution required permanent injury. Second, Mr. Ni contends that the BIA erred by refusing to consider his wife's persecution cumulatively with his persecution. Third, Mr. Ni disputes the BIA's determination that he failed to meet the standard for economic persecution. Finally, Mr. Ni challenges the BIA's conclusion that CAT relief is unavailable because there is insufficient evidence to establish that he would likely be tortured by the Chinese government.

We reject Mr. Ni's arguments because the BIA's determinations are supported by substantial evidence. Therefore, Mr. Ni's petition must be denied.

2

Mr. Ni and his wife lived in the Fujian Province in China. He was employed as a security guard.

The couple had one child together before they married on February 29, 2008. Mr. Ni was unable to register their child until he could produce an official marriage certificate.

Family planning officials attempted to coerce Mr. Ni's wife into wearing an intrauterine device, but were unable to do so due to her medical concerns. Instead, Mr. Ni's wife was directed to report for a gynecological examination every three months.

In November 2008, Mr. Ni's wife discovered that she was pregnant again while visiting her ailing father in Yunnan Province. Mr. Ni asked his wife to verify her pregnancy at a private clinic. Because he was worried about his wife being reported to the government, Mr. Ni advised his wife to remain inside her brother's home.

In early 2009, Mr. Ni's father-in-law passed away, and Mr. Ni traveled to Yunnan Province to join his wife and assist with funeral arrangements. During that visit, three family planning officials arrived at the home to take Mr. Ni's wife away for a forced abortion.

Mr. Ni argued with the officials, claiming that they lacked jurisdiction over his wife because the couple was from Fujian

Province. Mr. Ni also criticized the population control program. The officials asserted jurisdiction over Mr. Ni's wife because she was born in Yunnan Province.

A fight ensued between Mr. Ni and the officials. The officials summoned police, who arrived and arrested Mr. Ni. Mr. Ni's wife was taken away and compelled to undergo a forced abortion.

Mr. Ni was detained at the police station for approximately ten hours. Mr. Ni testified that he was beaten with a baton, suffering painful injuries. Mr. Ni sought medical attention for his bruises and pain after his release. He was then notified to pick up his wife at the facility where her pregnancy had been terminated.

On March 3, 2009, Mr. Ni was fired from his job as a security guard in Fujian Province because he had violated the governmental family planning policy. He testified that he attempted to find another job, but was unsuccessful because employers refused to hire a violator of the family planning policy. Mr. Ni continued his job search for approximately one month.

Mr. Ni left China on October 1, 2009 and entered the United States illegally on November 1, 2009. On July 2, 2010, Mr. Ni applied with the United States Citizenship and Immigration

4

Service (USCIS) for asylum, withholding of removal, and protection from removal under the CAT.

Following an interview with USCIS, Mr. Ni was issued a Notice to Appear charging him with removability. Mr. Ni conceded removability under Section 237(a)(1)(B) of the Immigration and Nationality Act (INA or the Act), which provides that any alien present in the United States unlawfully is deportable. See 8 U.S.C. § 1227(a)(1)(B) (2014). Mr. Ni resubmitted his application for relief.

On December 6, 2011, Mr. Ni appeared before an Immigration Judge to testify in support of his application. The Immigration Judge found Mr. Ni's testimony credible, but denied his application for asylum, withholding of removal and protection under the CAT. The Immigration Judge found that Mr. Ni's treatment failed to rise to the level of persecution. The Immigration Judge found no past persecution, and found any risk of future persecution to be speculative. Additionally, the Immigration Judge determined that Mr. Ni's termination from his government security job was not "so severe as to constitute a threat to his life or freedom." A.R. 37. The Immigration Judge further determined that "[t]here is no serious evidence that [Mr. Ni] would be tortured if he returned to China." A.R. 38. The Immigration Judge concluded that Mr. Ni did not qualify for asylum, withholding of removal or protection under the CAT.

5

On December 30, 2011, Mr. Ni appealed the Immigration Judge's decision to the BIA. On November 14, 2013, the BIA dismissed Mr. Ni's appeal and affirmed the Immigration Judge's decision. The BIA agreed with the Immigration Judge that the harm suffered by Mr. Ni on account of his "other resistance to a coercive population control program"[1] did not amount to persecution, noting that there was no evidence that Mr. Ni required medical treatment for his injuries[2] or suffered any long-term health effects. A.R. 6. Additionally, the BIA found that Mr. Ni failed to show that "he would suffer any persecution on account of 'other resistance' if he returned to China," and

---

[1] Section 101(a)(42) of the INA provides that "a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion." 8 U.S.C. § 1101(a)(42). The Immigration Judge found that Mr. Ni's opposition to China's population control program constituted "other resistance." The BIA agreed.

[2] At oral argument, Mr. Ni asserted that the Immigration Judge erred by finding that he did not require medical treatment for the injuries that he suffered. This Court concludes that any error regarding findings that Mr. Ni sought medical treatment for injuries under these circumstances would be harmless. See Ngarurih v. Ashcroft, 371 F.3d 182, 191 n.8 (4th Cir. 2004) ("While the general rule is that an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained . . . reversal is not required when the alleged error clearly had no bearing on the procedure used or the substance of the decision reached.").

his claim that he or his wife would be sterilized "is speculative at this time." Id. The BIA further found that the loss of his job was not "shown to be so severe as to constitute a threat to his life or freedom . . . particularly . . . when [Mr. Ni] only spent approximately one month looking for employment." Id. The BIA upheld the denial of CAT protection.

## II.

When the BIA affirms and adopts an Immigration Judge's decision, and includes its own reasons for affirming, this Court reviews both decisions as the final agency action. Marynenka v. Holder, 592 F.3d 594, 600 (4th Cir. 2010). The BIA's determination that an alien is not eligible for asylum must be upheld unless that determination is "manifestly contrary to the law and an abuse of discretion." 8 U.S.C. § 1252(b)(4)(D) (2014). This Court may not disturb the BIA's determinations on asylum eligibility so long as those determinations "are supported by reasonable, substantial, and probative evidence on the record considered as a whole." Tassi v. Holder, 660 F.3d 710, 719 (4th Cir. 2011). While we review the BIA's legal conclusions de novo, our standard of review of the agency's factual findings is "narrow and deferential." Djadjou v. Holder, 662 F.3d 265, 273 (4th Cir. 2011). We accept the agency's factual findings unless "any reasonable adjudicator

7

would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

The scope of our review of a final order denying withholding of removal is likewise narrow. See Hui Pan v. Holder, 737 F.3d 921, 926 (4th Cir. 2013). Where, as here, the BIA concludes that the applicant has not met the applicable burden of proof, "we will affirm the BIA's determination if it is supported by substantial evidence on the record considered as a whole." Niang v. Gonzales, 492 F.3d 505, 510 (4th Cir. 2007). Even if the record "plausibly could support two results: the one the [Immigration Judge] chose and the one [the petitioner] advances, reversal is only appropriate where the court find[s] that the evidence not only supports [the opposite] conclusion, but *compels* it." Id. at 511 (first alteration added) (internal quotation marks omitted).

### III.

### A.

Mr. Ni challenges the BIA's conclusion that he failed to meet his burden of proof for asylum and withholding of removal. He contends that a finding of past persecution does not require permanent injury, and that the injuries inflicted on him by Chinese government officials amounts to past persecution.

Section 1158 of Title 8 provides that the Secretary of Homeland Security and the Attorney General have discretion to

8

grant asylum to any alien who is a "refugee." 8 U.S.C. § 1158(b) (2014). A "refugee" is an alien who is unable or unwilling to return to his or her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A) (2014).

Applicants bear the burden of proving eligibility for asylum. 8 C.F.R. § 1208.13(a) (2013). To meet their burden, applicants may show that they have a well-founded fear of future persecution, or that they suffered past persecution. Id. § 1208.13(b). Applicants who demonstrate past persecution are presumed to have a well-founded fear of future persecution. Id. § 1208.13(b)(1).

Qualifying for withholding of removal also requires a showing of persecution, but "'implicates a more demanding standard of proof.'" Lizama v. Holder, 629 F.3d 440, 446 n.3 (4th Cir. 2011) (quoting Mirisawo v. Holder, 599 F.3d 391, 396 (4th Cir. 2010)). Accordingly, an applicant "who fails to meet the lower standard for showing eligibility for asylum will be unable to satisfy the higher standard for showing withholding of removal." Mirisawo, 599 F.3d at 396.

For purposes of gaining asylum, persecution is construed as involving "'the infliction or threat of death, torture, or injury to one's person or freedom, on account of one of the

9

enumerated grounds in the refugee definition.'" Li v. Gonzales, 405 F.3d 171, 177 (4th Cir. 2005) (quoting Kondakova v. Ashcroft, 383 F.3d 792, 797 (8th Cir. 2004)). The term encompasses "'actions less severe than threats to life or freedom,'" but these actions must be more than mere harassment. Id. (quoting Dandan v. Ashcroft, 339 F.3d 567, 573 (7th Cir. 2003)). If an applicant seeking asylum or withholding of removal demonstrates that he or she "has been severely physically abused or tortured, courts have not hesitated to characterize such treatment as persecution." Id.

If an applicant can establish past persecution based on a protected factor, the applicant is presumed to have a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b)(1). "In contrast, if an alien has been mistreated in the past on the basis of a protected factor, but the mistreatment did not rise to the level of persecution, the alien cannot prove a well-founded fear of future persecution merely by relying on the past mistreatment." Li, 405 F.3d at 176–77. Instead, applicants must prove that they have reason to believe they will suffer more, and be persecuted, upon return to their native country. Id. at 177.

Mr. Ni contends that he made the necessary showing to establish past persecution.[3] Specifically, Mr. Ni contends that past persecution does not require permanent injury, and that the injuries he suffered constitute past persecution. Pet'r Br. 9–13.

We have held that "[e]ligibility for asylum based on severity of persecution alone is reserved for the *most atrocious abuse*." Gonahasa v. INS, 181 F.3d 538, 544 (4th Cir. 1999) (emphasis added). "[P]ersecution is an extreme concept that does not include every sort of treatment that our society regards as offensive." Gormley v. Ashcroft, 364 F.3d 1172, 1180 (9th Cir. 2004) (internal quotation marks and alterations omitted) (citation omitted). Brief detentions or repeated

---

[3] The Immigration Judge noted that:

> For years the Board of Immigration Appeals held that coercive population control persecution to the wife was persecution to the entire family and, therefore, the husband could obtain asylum on that basis. See Matter of C-Y-Z-, 21 I&N Dec. 915 (BIA 1997). However, the Attorney General overruled that decision in Matter of J-S-, 24 I&N Dec. 250 (AG. 2008). This decision . . . has been upheld by the Court of Appeals. See Yi Ni v. Holder, 613 F.3d 415 (4th Cir. 2010). Therefore what happened to respondent's wife, although clearly persecution, is not persecution to respondent.

A.R. 35–36.

Accordingly, even though the mistreatment of his wife is deplorable, Mr. Ni would have to demonstrate that he himself suffered past persecution.

11

interrogations fail to rise to the level of persecution.  See

Dandan, 339 F.3d at 573 (upholding the BIA's determination that

an applicant had not been persecuted despite a three-day

detention in which the applicant was interrogated, beaten, and

deprived of food and water).[4]

"Courts . . . have been reluctant to categorize detentions

unaccompanied by severe physical abuse or torture as

persecution." Li, 405 F.3d at 177 (citing cases).

In contrast, as noted above, when applicants who seek

asylum demonstrate that they have been "severely physically

abused or tortured, courts have not hesitated to characterize

such treatment as persecution."  Li, 405 F.3d at 177 (citing

cases).

Our decisions construe persecution narrowly.  In Ngarurih

v. Ashcroft, 371 F.3d 182 (4th Cir. 2004), we held that the

petitioner could not establish past persecution severe enough to

warrant relief under 8 C.F.R. § 1208.13(b)(1)(iii) where,

because of his political activities, the petitioner had been

interrogated under threat of execution, held for a week in a

dark cement cell that officials flooded with cold water at

irregular intervals, and imprisoned for several months in

---

[4] Comparatively, a one-time detainment of ten hours of this nature likewise fails to rise to the level of persecution.  See Dandan, 339 F.3d at 573.

12

solitary confinement. Id. at 185. In Rusu v. INS, 296 F.3d 316 (4th Cir. 2002), we concluded that the past persecution the petitioner suffered "was horrible," but "not of the scale warranting a grant of asylum" where that persecution involved interrogation, assault, and torture, including the removal of his teeth with pliers and a screwdriver. Id. at 325.

Mr. Ni refers to the decision in Sanchez Jimenez v. U.S. Atty. Gen., 492 F.3d 1223 (11th Cir. 2007). In Sanchez Jimenez, the petitioner was a member of the Conservative Party in Colombia, which the Revolutionary Armed Forces of Colombia (FARC) opposed. FARC threatened the petitioner's life and the lives of his family members repeatedly. Id. at 1233. On one occasion, FARC attempted to murder the petitioner by shooting at his moving vehicle. Id. FARC also attempted to kidnap his daughter. Id. The Immigration Judge omitted the details of the shooting from his legal analysis, and instead focused on the fact that the petitioner "was not physically harmed." Id. On appeal, the Court of Appeals for the Eleventh Circuit found that the multiple threats to the petitioner's life amounted to persecution—"put simply, attempted murder is persecution." Id.

Mr. Ni's reliance on Sanchez Jimenez is misplaced. Like the petitioner in Sanchez Jimenez, Mr. Ni did not sustain permanent physical injury. However, unlike the petitioner in that case, Mr. Ni failed to present evidence that his life was

13

threatened or that attempts against his life were made. Although Mr. Ni's mistreatment—being detained and beaten by Chinese officials—is abhorrent, this occurred once. This Court has recognized that "[a] key difference between persecution and less-severe mistreatment is that the former is 'systematic' while the latter consists of isolated incidents." Baharon v. Holder, 588 F.3d 228, 232 (4th Cir. 2009) (quotation marks and citation omitted). Mr. Ni was detained for ten hours, beaten with a baton, and released. This isolated incident, although cruel, fails to rise to the level of persecution required for relief under the Act.

"Because the burden of proof for withholding of removal is higher than for asylum—even though the facts that must be proved are the same—an applicant who is ineligible for asylum is necessarily ineligible for withholding of removal." Camara v. Ashcroft, 378 F.3d 361, 367 (4th Cir. 2004).

Accordingly, we are compelled to find that the BIA's determination that Mr. Ni did not suffer past persecution, and lacked a well-founded fear of future persecution, was supported by substantial evidence. The BIA's determination is not manifestly contrary to law.

**B.**

Mr. Ni next contends that the Immigration Judge failed to consider the forced termination of his wife's pregnancy

14

cumulatively with his own alleged persecution. "Violence or threats to one's close relatives is an important factor in deciding whether a petitioner's mistreatment" rises to the level of persecution. Baharon, 588 F.3d at 232 (citing cases). "This is especially so where the harm inflicted on family members adds immediacy and severity to threats directed at the petitioner, making it more reasonable for the petitioner to fear" suffering the same mistreatment. Id. (citing cases).

In the cases cited, the petitioners' family members and friends were threatened with bodily harm or death, *while* the petitioners were also being personally threatened. Mr. Ni's wife's persecution—her forced abortion—is not persecution that Mr. Ni will face, or could fear facing, upon his return to China. Mr. Ni testified that if his wife were to get pregnant again, she would be forced to terminate her pregnancy. This well-founded fear of persecution for his wife is inapplicable to Mr. Ni. See Yi Ni v. Holder, 613 F.3d 415, 427–28 (4th Cir. 2010) (holding that coercive population control persecution to a wife is no longer considered persecution to the family). As such, Mr. Ni's wife's persecution cannot be imputed to him. See id. Accordingly, we hold that the Immigration Judge's failure to consider Mr. Ni's wife's abortion as cumulative to his mistreatment is not manifestly contrary to law.

## c.

Mr. Ni next challenges the Immigration Judge's determination that the loss of his job did not rise to the level of economic persecution. Specifically, Mr. Ni argues that the Immigration Judge engaged in speculation as to the likelihood of Mr. Ni's ability to obtain employment.

"While persecution is often manifested in physical violence, the harm or suffering [amounting to persecution] need not be physical, but may take other forms," if the harm is "of sufficient severity." Mirisawo, 599 F.3d at 396 (alteration in the original) (internal quotation marks omitted) (citing H.R. Rep. No. 95-1452, at 5 (1978), *reprinted in* 1978 U.S.C.C.A.N. 4700, 4704). "[E]conomic penalties rise to the level of persecution only if such sanctions are sufficiently harsh to constitute a threat to life or freedom." Id. (internal quotation marks and citations omitted).

The Immigration Judge concluded that Mr. Ni's testimony, although credible, did not meet the standard of economic persecution, particularly because he conducted a job search for a relatively short period of time. The BIA agreed. To the extent the BIA based its decision on dicta that speculated that Mr. Ni could have obtained a job in the private sector, it is harmless error. See Ngarurih, 371 at 191 n.8. There is substantial evidence on the record that Mr. Ni conducted a job

16

search for only one month. Mr. Ni failed to demonstrate that the record compels the conclusion that he suffered economic harm so severe that it threatened his life or freedom.

Without more, the record falls short of justifying a reversal of the BIA. We must uphold the BIA's decision so long as it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Tassi, 660 F.3d at 719. Here, substantial evidence supports the BIA's determination that Mr. Ni failed to show that the loss of his job was so severe as to constitute a threat to his life or freedom. The record is insufficient to compel a contrary conclusion.

## D.

Mr. Ni's final argument is that the BIA improperly denied his claim for relief under the CAT. As stated above, our standard of review is deferential to the BIA. We review a denial of relief under the CAT for substantial evidence. See Lizama, 629 F.3d at 449. "Under this standard, 'administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" Suarez-Valenzuela v. Holder, 714 F.3d 241, 245 (4th Cir. 2013) (quoting 8 U.S.C. § 1252(b)(4)(B)).

An applicant for withholding of removal under the CAT must "establish that it is more likely than not that he or she would

17

be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2) (2015). The burden of proof rests with the applicant. Id.

Mr. Ni contends that his credible evidence and testimony entitles him to protection under the CAT. The Immigration Judge found Mr. Ni to be completely credible, but also found that Mr. Ni offered "no serious evidence that he would be tortured if he returned to China." A.R. 38. We are compelled to agree. Although the facts presented here are troubling, our role must be "to ensure that substantial evidence supports the BIA's judgment." Gonahasa, 181 F.3d at 542. The evidence that Mr. Ni presents in this appeal is insufficient to overcome the findings and conclusions of the BIA.

## IV.

Pursuant to the foregoing, we are compelled to deny Mr. Ni's petition for review, and must affirm the BIA's order.

PETITION DENIED

18